Milligan, J.,
delivered the opinion of the Court.
The plaintiff in error was tried and convicted, in the Circuit Court of Fayette County, upon a presentment for unlawfully retailing spiritous liquors. On the trial, he produced and read in evidence, license issued by Wm. H. Thompson, as Clerk of the County Court of Fayette County, bearing date, July 26, 1865. The oath and bond required in such cases, were all in conformity to law. No exception was taken to the formality of this proceeding. It further appeared that Thompson was elected Clerk of the County Court, at the regular election for County officers, in March, 1862, and that he continued to hold, and exercise the functions of his office, from that time until October, 1865, when he surrendered it to one John C. Pewes, an appointee of the Executive of the State. The records of the County Court were also produced, from which, it appears, that the Justices of the County had continued, during the whole period of the war, with but little intermission, to exercise, in quorum and quarterly sessions, their varied and important duties. Thompson had acted, during the whole period, as Clerk; and as such, he had riot only control and custody of the public records, but he had kept the minutes of the Court, the revenues, issued marriage licenses, made settle *607 ments with guardians and administrators, attested official bonds, and done and performed all other acts and things pertaining to the regular discharge of the duties of his office. Under this state of facts, the Court, among other things, which is unnecessary to notice, in substance, charged the jury: “That inasmuch as Mr. Wm. H. Thompson was elected under Confederate rule, and he had taken the oath to support the Confederate States, instead of the Constitution of the United States, and State of Tennessee, he was not properly inducted into office, and therefore the license of William H. Thompson, with the oath and bond to which the same refers, was a nullity, and no protection to the defendant.” * * * * *. To say nothing of the efforts of the> plaintiff in error, to place himself within the protection of the law, and the manifest absence of all intention to violate it, we think it entirely clear that the instructions to the jury were erroneous. Whatever may be said of Thompson’s election under Confederate authority, and impropriety of the oath which is assumed in the charge he took,, and induction into office, it is perfectly apparent that he entered upon office in consequence of his election-in March, 1862, and that he became vested with it, and continued to exercise its functions under color of right, up to the time he was relieved, by his successor. He was, therefore, to 'all intents and purposes, an officer de facto, and his -official acts, as to the public and third persons, valid and binding. And this, as a rule of law, is often so, when the authority under which such officers act, is totally void. *608 Public convenience and justice, require, that those acts should be supported. The doctrine is a familiar one, both in England and America. In our own country, it has been repeatedly recognized. In the case of Venable & Co. vs. Curd and White, 2 Head, 582, the Court says — Judge Wright delivering the opinion: “Indeed, no principle is better settled in English and American law, than that the acts of officers de facto are valid. When they can serve the public, or the rights of third persons, who have an interest in the act done; and the rule has been adopted to prevent a failure of public justice. But a different rule prevails, when the act is for the benefit of the officer, because he shall not of his error of title, which he must be cognizant of; but when it is for the benefit of strangers, or the public, who are presumed to be ignorant of such defect of title, it is good:” Taylor vs. Skaine, 2 South Car. Rep., 696; People vs. Collins, 7 Johns. Rep., 135. To which may be added, Pierce vs. Hawkins, 2 Swan, 87; Blackburn vs. The State, 3 Head, 690. This is one of necessity, to save the rights of persons having an interest in the acts of such public officers; and to prevent absolute failure of justice, it has at all times and in all countries, been recognized; and certainly the time never was, in our history, when its application was more imperiously demanded. Tom and convulsed as every department of the State Government has been, by the late war, it cannot be presumed that the internal police of the State was conducted, in every instance, in strict conformity to law. To hold, under such circumstances, *609 every irregularity a nullity, and the official acts of all the public officers, who were not elected or appointed in strict conformity to the ancient state of things, absolutely void, would involve the State in irremediable difficulties, and entail upon the population a train of evils little short of those inflicted by the war itself. There is nothing in the Schedule to the amended Constitution, in conflict with this principle, as has been substantially adjudicated at this Term, in the case of the State of Tennessee, for the use of J. S. Hubbard, vs. Matilda A. Taylor et als., manuscript.
The judgment of the Circuit Court must be reversed, and the. cause remanded for a new trial.